Robert RICKARD, Plaintiff,

v.

Ronald PRINGLE, Carl Helwig, Allan Boehm, Jay E. Porter, George Lindley, Sr. and George Lindley, Jr., Defendants.

No. 63-A-1248.

United States District Court
E. D. New York.

March 5, 1968.

Haight, Gardner, Poor & Havens, New York City, for plaintiff; Gordon W. Paulsen, Raymond P. Hayden, New York City, of counsel.

Robert G. Wilkins, Seaford, N. Y., for defendant-respondent.

ABRUZZO, District Judge.

This cause of action concerns the salvage by the Plaintiff Rickard during 1962 and 1963 of the propeller of the "Acara", which had been abandoned in 1902, following her having been stranded and sunk off of Point Lookout, Long Island, New York. This cause was instituted prior to the recent amendment and revision of the Rules of Practice in Admiralty and Maritime cases, but for purposes of this opinion, terminology under the new Rules will be used by this Court.

A written Stipulation was entered into by the attorneys for both parties on May 12, 1967, which reads as follows:

"IT IS HEREBY STIPULATED by and between the proctor for the Libelant and the proctors for the Respondents herein that the following are the uncontested facts in this suit in admiralty. The Respondents admit to the allegations of the libel, and the position of the Respondents is simply that the propeller was not the property of the Libelant and therefore was theirs to take, and they so did. The Respondents do not admit that the Libelant owned the propeller or had the right to remove it from the wreck.

"Therefore, the only issue of law involved herein as to whether the Respondents acted within their rights and duties in so appropriating the said propeller."

The facts alleged in the Complaint, all of which the Defendants have admitted to be true by the above Stipulation, which is filed with this Court, are as follows:

"THIRD: The Libelant, ROBERT RICKARD, in the summer of 1962, while diving off Point Lookout, Long Island, New York, in the Atlantic Ocean, came into contact with a derelict, the 'ACARA', commonly known as the 'TEA WRECK', which had sunk in 1902.

"FOURTH: The Libelant dived to the scene of the wreck and ascertained that the propellor, which was attached to the said derelict, was of great size and weight, and was intact, and that the said propellor bore the imprint, 'Manufactured by Stones Bronze Company of London, England'.

"FIFTH: The Libelant made an investigation in the United States and in England and ascertained that J. Stone Co. (Propellors) Ltd. of London, England, had become the successor to Stones Bronze Co. about the year 1894. The Libelant contacted the said successor Company and was informed that the said Company was willing to purchase said propellor as an antique, and as an example of the Company's early propellors providing the said propellor could be removed from the said derelict, 'ACARA'.

"SIXTH: The Libelant also ascertained that the said propellor was of such a nature as a marine antique that its salvage would be an exciting event in the maritime world; that a marine museum would be interested in its display; that it interested marine engineers and naval architects because of its ancient design and its use to propel ships in the era of its manufacture; that the propeller's metal-

lurgic composition was of great importance because of its resistance to the ravages of time and the sea.

"SEVENTH: The Libelant commenced salvage operations in the fall of the year, 1962, on the derelict, 'ACARA', and worked during the entire winter of 1962–1963 on the said propellor.

"EIGHTH: The Libelant placed floating buoys at the scene of the said salvage operation.

"NINTH: Once having commenced the salvage work on the said derelict, the Libelant never abandoned his work on this project, nor did he ask for assistance at any time from any of the respondents in this project.

"TENTH: The Libelant purchased special machinery, equipment and supplies, expending the total sum of One Thousand Seven Hundred and Seventeen and 96/100 ($1717.96) Dollars for the specific purpose of removing the said propellor from the said derelict, 'ACARA'.

"ELEVENTH: The Libelant succeeded in detaching and removing the propellor from the said derelict, 'ACARA'. He then departed from the scene of said salvage operation to make arrangements to engage machinery for the purpose of lifting to the surface and transporting the blades of the propellor which were of great size and weight as aforesaid.

"TWELFTH: The entire salvage operation had extended approximately over a period of ten months from the time the Libelant descended to the said derelict, 'ACARA', until the time he removed the said propellor.

"THIRTEENTH: The Libelant was at all times during this salvage operation risking equipment worth Twenty-Five Thousand ($25,000.00) Dollars.

"FOURTEENTH: Upon information and belief, the respondent, JAY E. PORTER, in the month of July, 1963, with full knowledge that Libelant was engaged in said salvage operation as aforesaid, transported the respondents, ALLAN BOEHM, RONALD PRINGLE and CARL HELWIG on board the vessel, JESS LU III to the scene of the said salvage operation, and said respondents, with full knowledge that the Libelant was temporarily absent from the said scene, dragged part of the propellor by means of a winch on board said vessel, JESS LU III, along the bottom of the water to Freeport, New York, and appropriated the same to their own use and possession.

"FIFTEENTH: With full knowledge that the Libelant had salvaged the said propellor from the derelict, 'ACARA', and was engaged in the salvage work thereon, and that the said Libelant had not abandoned the salvage operation, all of the respondents acted in concert to remove, and did remove part of the said propellor, dispose of, sell the same and divided the proceeds from the said sale, and in fact did remove, dispose of, sell and divide among themselves the proceeds from the sale of part of the said propellor for its mere metal content.

"SIXTEENTH: The Libelant, ROBERT RICKARD, made demand on the respondents, RONALD PRINGLE, CARL HELWIG, ALLAN BOEHM, JAY E. PORTER, GEORGE LINDLEY, SR. and GEORGE LINDLEY, JR. for the return of said propellor. The demand was refused by said respondents, and at this time the Libelant does not know the whereabouts of this propellor.

"SEVENTEENTH: That due to the acts of the respondents, as hereinbefore stated, Libelant did not receive the honor and favorable publicity which would have been of great financial benefit to the Libelant in his salvage business, and Libelant was deprived of income as an author and lecturer on the subject of the salvage of said propellor."

■ The only contention of the Defendants in their Stipulation of May 12, 1967, is to the effect that Plaintiff did not own the propeller nor have the right

to remove it from the wreck; and since the propeller was not the property of the Plaintiff, it therefore was theirs to take. The Stipulation further states that the only issue of law involved is "whether the Respondents acted within their rights and duties in so appropriating the said propeller".

## PLAINTIFF HAD A RIGHT TO SALVAGE THE PROPELLER OF THE DERELICT "ACARA"

██ Public policy is to encourage volunteers in the salvage of derelict, abandoned or distressed property. For this reason salvage awards in generous amounts have traditionally been given to successful salvors. See The Blackwall, 10 Wall. 1, 13, 77 U.S. 1, 13, 19 L.Ed. 870 (1869); Anderson v. Edam, 13 F. 135 (E.D.N.Y.1882).

"Salvage awards are not intended merely as compensation for work and labor performed. Public policy intends them as rewards in the nature of a bounty to encourage voluntary services by seamen and others to save imperilled lives, ships and their cargoes." Burke v. United States, 96 F.Supp. 335 (S.D.N.Y.)

██ That the "Acara" which sunk in 1902, was a derelict is without question in fact and law. Rowe v. The Brig, Judge Story, 20 Fed.Cas. pp. 1281, 1282, No. 12,093 [C.C.Mass.1818]. Tubantia, 18 Lloyds L. Report 158 [Admiralty Div. 1924].

██ The plaintiff Rickard, as the first salvor to commence salvage operations on the propeller of the "Acara" had the right to do so since:

"When a ship or property has been abandoned or when it has been temporarily left, and is in a disabled or damaged condition so as to require assistance, one who in good faith takes possession as a salvor, is not an interloper or trespasser, * * *"

Norris—The Law of Salvage § 136, pg. 228.

## PLAINTIFF AS FIRST SALVOR IS ENTITLED TO SOLE POSSESSION OF THE SALVAGED PROPELLER

The Complaint, which is now deemed admitted, clearly shows that the Plaintiff discovered the propeller of the "Acara", made investigation, spent various monies for the purpose of salvaging this propeller, and began salvage operations, placing floating buoys at the scene of said salvage operations. After approximately ten months he successfully detached and removed the propeller from the "Acara" and left the wreck temporarily to "engage machinery for the purpose of lifting to the surface and transporting the blades of the propeller which were of great size and weight".

 It is evident that Plaintiff was successfully prosecuting the salvage operation and did not abandon it at any time and thus was entitled to the rights of a first salvor legally in possession. Since the "Acara" had rested on the ocean floor in an abandoned state for sixty years, ownership of the salvaged propeller would vest by operation of law in Rickard, as the first finder lawfully and fairly appropriating it and reducing it to possession, with intention to become its owner. See The Clythia, D.C., 186 F.Supp. 452; 1 C.J.S. Abandonment § 9, p. 18.

## DEFENDANTS WRONGFULLY INTERFERED WITH THE PLAINTIFF-SALVOR'S POSSESSION OF THE PROPELLER OF THE "ACARA" AND HAVE NO RIGHTS IN THE SAID PROPELLER

Paragraphs FOURTEENTH and FIFTEENTH of the Complaint completely cover the fact that the Plaintiff was engaged in salvage work on the propeller, had not abandoned his salvage operation, and that the Defendants, with full knowledge of this, and with knowledge that Plaintiff was temporarily absent, acting in concert, did remove the said propeller and appropriate same to their own use, selling the same and dividing the pro-

ceeds from the said sale among themselves, thereby destroying the fruits of Plaintiff's labor.

A strong inference can readily be drawn from the facts stated in the Complaint that the Defendants' conduct indicated that they must have been watchful of the Plaintiff's efforts, for they readily pounced upon this propeller at a time when they saw that the Plaintiff had temporarily departed from his salvage operation. It wasn't co-incidental that the Defendants were at the site where the Plaintiff was working on this wreck, at the time that they moved in with their boat and attached lines to the propeller and dragged it to Freeport, since when they started to drag the propeller they could see from the buoys that someone had been working there.

With respect to abandoned property, the first salvors have possession of the distressed property with which no one can interfere, and the admiralty courts will protect the rights of the first salvor legally in possession whose right of possession has been wrongfully interfered with.

The rule respecting dispossession of one salvor by another was stated in the *Edilio*, as follows:

"It is well settled, upon just principles, that as between two sets of salvors, if it appears that the claim of a set of salvors to a share in the salvage reward is based upon the dispossession, against their will, of other persons who were at the time continuously engaged in salving the vessel in distress, and who were willing themselves to persevere in the service which they had begun, the court allows the claim only, if it is clearly proved that the first salvors had not any fair prospect of success. In the absence of such proof, the burden of which lies upon the second set of alleged salvors, the court holds the dispossession to be wrongful, and treats the subsequent service rendered by the wrongdoers as inuring wholly to the benefit of those who have been dispossessed, and not as entitling the wrongdoers to any share in the salvage award." 246 F. 470 (D.C.N.C.1917)

Judge Betts in the *John Gilpin* [*] commented that those beginning a salvage service and who are successfully prosecuting it are entitled to the sole possession of the property. If they are interrupted or intercepted in the work by others who complete the salvage service and bring in the salved property, the first salvors will, nevertheless, be regarded as the meritorious salvors.

The Plaintiff is clearly entitled to a decree in his favor.

Conclusions of fact and of law and a decree must be submitted to this Court within twenty days, in accordance with this decision.

---

[*] Fed.Cas.No.7,345—D.C.S.D.N.Y.1845.