TREASURE SALVORS, INC., a corporation, and Armada Research Corp., a corporation, Plaintiffs,

v.

The Unidentified Wrecked and ABANDONED SAILING VESSEL, Her Tackle, Armament, Apparel and Cargo Located within 2500 Yards of a Point at Coordinates 24° 31.5′ North Latitude and 82° 20′ West Longitude, Said Sailing Vessel is BELIEVED TO BE THE NUESTRA SENORA DE ATOCHA, Defendant.

No. 75–1416–Civ–WM.

United States District Court, S. D. Florida.

Feb. 3, 1976.

As Amended Feb. 4, 1976.

---

David Paul Horan, Key West, Fla., and Joshua M. Morse, III, Tallahassee, Fla., for plaintiffs.

Bruce C. Ráshkow, Michael W. Reed, Attys., Dept. of Justice, Washington, D. C., Robert W. Rust, U. S. Atty., Miami, Fla., for defendant.

## ORDER OF SUMMARY JUDGMENT

MEHRTENS, Senior District Judge.

This cause came before the Court upon Plaintiff's Motion For Summary Judgment. The Defendant/Intervenor, the United States of America, has submitted an opposing memorandum of law. The sole issue to be resolved by this Court is whether the provisions of the Antiquities Act, 16 U.S.C. §§ 432, 433, or of the Abandoned Property Act, 40 U.S.C. § 310, are applicable to the salvage of a ship wreck discovered on the continental shelf outside the territorial waters of the United States.

Plaintiff brought this action for possession and confirmation of title against all persons as to an unidentified, wrecked and abandoned vessel, thought to be the "Nuestra Senora de Atocha," which sank in or about the year 1622 while en route from the Spanish Indes to Spain. The United States has answered

and counterclaimed, seeking title to the vessel on the basis of the statutes cited above. It is undisputed that the site of the wreck is on the continental shelf but outside the territorial waters of the United States.

Plaintiff asserts that, where a vessel has been abandoned, the finder in possession becomes the owner of the vessel. Such a claim is properly within the scope of a salvage action. *Broere v. Two Thousand One Hundred Thirty Three Dol.,* 72 F.Supp. 115 (E.D.N.Y. 1947). General principles of maritime and international law dictate that an abandonment constitutes a repudiation of ownership, and that a party taking possession under salvage operations may be considered a finder under the doctrine of "animus revertendi," i. e., the owner has no intention of returning. *Wiggins v. 1100 Tons, More Or Less, Of Italian Marble,* 186 F.Supp. 452, 456 (E.D.Va. 1960). Ownership in the vessel would then vest in the finder by operation of law. *Rickard v. Pringle,* 293 F.Supp. 981, 984 (E.D.N.Y.1968), citing *Wiggins, supra,* and 1 C.J.S. Abandonment § 9, p. 18. Thus, those beginning a salvage service as to an abandoned vessel are entitled to sole possession of the property. See *Rickard v. Pringle, supra,* at 985, citing *The John Gilpin,* Fed.Cas.No. 7,345 (S.D.N.Y.), and *Brady v. The Steamship African Queen,* 179 F.Supp. 321, 323 (E.D.Va.1960).

The United States counters the impact of the foregoing principles with the contention that objects of antiquity recovered by persons subject to the jurisdiction of the United States are taken in the name of the sovereign and are the property of the people of this country as a whole, not the finders alone. The foundation of this argument is the concept of the sovereign prerogative, a common law notion derived from the right of the King of England to objects recovered from the sea by his subjects. The government submits that the sovereign prerogative applicable to the facts of this case was legislatively asserted by Congress through the enactment of 16 U.S.C. §§ 432, 433, and 40 U.S.C. § 310. It is clear that, under the American rule, the legislature must manifest a specific intent to appropriate derelict property. *United States v. Tyndale,* 116 F. 820 (1st Cir. 1902); *Thompson v. United States,* 62 Ct.Cl. 516 (1926).

As to the government's claim based upon the Abandoned Property Act, 40 U.S.C. § 310, the Court finds that the interpretation of the act reflected in the case of *Russell v. Forty Bales Cotton,* 21 Fed.Cas.No.12,154 (S.D.Fla.1872), is persuasive.[1] In *Russell,* the court discussed at length the claim of ownership of derelicts by the United States under the doctrine of sovereign prerogative as opposed to the rule of the law of nations that a finder is entitled to possession and control against the whole world except the original owner. The court admitted that derelict property whose owner is unknown belongs to the finder or to the sovereign if the laws give to the sovereign a right to the property. The task before the Court in *Russell* then, was to determine whether such abandoned property "ought to come to the United States" as contemplated by 40 U.S.C. § 310.

Having examined the history of the Abandoned Property Act, the court in *Russell* determined that the phrase "ought to come to the United States," refers to abandoned or derelict property strewn about the country and its harbors during the Civil War, the rationale being that such property had a relationship to the naval and military operations of the United States or its enemy. The court concluded that the United States, not having specifically provided by statute for the exercise of its sovereign prerogative, could not claim the proceeds of the derelict in question since it was not a product of the conflict between the states.

---

1. The statute involved in *Russell* was 16 Stat. 380 (1870), the predecessor of 40 U.S.C. § 310 and similar in all pertinent respects.

■ There is yet another flaw which is fatal to the government's reliance on 16 U.S.C. §§ 432, 433 and 40 U.S.C. § 310. The Antiquities Act applies to any object of antiquity "situate on lands owned or controlled by the Government of the United States." The Abandoned Property Act embraces property "within the jurisdiction of the United States." This Court finds that the property of the wreck involved in this case is neither within the jurisdiction of the United States nor owned or controlled by our government.

■ As previously stated, the parties agree that the wreck is located on the outer continental shelf of the United States. The government maintains that the effect of 43 U.S.C. § 1332 et seq. is to bring the abandoned vessel in this case within the jurisdiction of the United States and thus within the purview of 40 U.S.C. § 310 and 16 U.S.C. §§ 432, 433.[2] However, this statute merely asserts jurisdiction over the minerals in and under the continental shelf. *Guess v. Read,* 290 F.2d 622 (5th Cir. 1961), cert. den. 368 U.S. 957, 82 S.Ct. 394, 7 L.Ed.2d 388. It is significant that 43 U.S.C. § 1332(b) preserves the character of the water above the outer continental shelf as high seas.

The government's jurisdictional assertion is further discounted by paragraph one of Article 2 of the Convention On The Continental Shelf,[3] which states that a coastal state exercises sovereign rights over the continental shelf "for the purpose of exploring it and exploiting its natural resources." In its report, the International Law Commission made the following comments in reference to the proposed Convention On The Continental Shelf:

"It is clearly understood that the rights in question do not cover objects such as wrecked ships and their cargoes (including bullion) lying on the seabed or covered by the sand of the subsoil.[4]

■ It appears, then, that the Convention does not change the law of salvage as it applies to res derelictae, even though the recovery of such property might involve contact with the seabed or removal of sand and other materials. If, for the purposes of argument, the Court accepted the government's position that 43 U.S.C. § 1332 brings the abandoned property within the jurisdiction of the United States, then the inconsistent language of the Convention On The Continental Shelf nullifies the jurisdictional effect of 43 U.S.C. § 1332, at least in the context of the facts of this case. The Geneva Convention On The Continental Shelf supersedes any incompatible terminology of the Outer Continental Shelf Lands Act. *United States v. Ray,* 423 F.2d 16 (5th Cir. 1970). In this light, the United States has no basis for asserting its sovereign rights in sunken treasure (which, of course, is not a natural resource) found on the outer continental shelf. Indeed, this is the conclusion reached by an attorney with the appellate section of the Land and Natural Resources Division of the Department of Justice in 1969.[5]

■ The conclusion reached above also disposes of the government's argument that the United States does have jurisdiction to restrict the activities of its

2. 43 U.S.C. § 1332 reads as follows:

"(a) It is declared to be the policy of the United States that the subsoil and seabed of the outer Continental Shelf appertain to the United States and are subject to its jurisdiction, control, and power of disposition as provided in this subchapter.

(b) This subchapter shall be construed in such manner that the character as high seas of the waters above the outer Continental Shelf and the right to navigation and fishing therein shall not be affected."

3. Convention On The Continental Shelf, U. N. Doc. A/Conf. 13/L.55.

4. U. N. General Assembly Official Records, Eleventh Session, Supplement No. 9 (A/3159), p. 42.

5. Robert M. Perry, "Sovereign Rights In Sunken Treasures," Land and Natural Resource Division Journal, Vol. 7, No. 3, March, 1969.

citizens and corporations even though they may be conducted extraterritorially. This contention may well be true but is not particularly relevant in the circumstances of this case. First of all, 16 U.S.C. §§ 432, 433 and 40 U.S.C. § 310 apply to property within the jurisdiction of the United States or upon lands owned or controlled by the United States. The ship wreck in this cause does not fall within either category. Secondly, a review of the regulations drafted to supplement 16 U.S.C. §§ 432, 433 indicates that the term "lands" is used in its narrow sense and does not include the outer continental shelf.[6] Thirdly, to the extent that 16 U.S.C. § 433 attempts to restrict personal activity and to impose criminal sanctions for non-compliance, the statute has been held to be unconstitutionally vague. *United States v. Diaz*, 499 F.2d 113 (9th Cir. 1974). It should also be noted that an extension of jurisdiction for purposes of controlling the exploitation of the mineral resources of the continental shelf is not necessarily an extension of sovereignty. A ruling to the contrary might well provoke an international controversy.

In summary, the Court concludes that Congress has not exercised its sovereign prerogative to the extent necessary to justify a claim to an abandoned vessel located on the outer continental shelf. Under the facts of this case, possession and title are rightfully conferred upon the finder of the res derelictae. Accordingly, it is

Ordered and adjudged that summary judgment is hereby entered in favor of plaintiffs and against the United States. Plaintiffs shall have 20 days in which to submit to this Court a final decree consistent with the foregoing opinion.

Done and ordered at Miami, Florida, this 2nd day of February, 1976.