PEOPLE v MASSEY

Docket No. 68736. Submitted March 14, 1984, at Lansing.—Decided
September 17, 1984. Leave to appeal applied for.

Defendant, Mark A. Massey, was convicted by a jury in the
Cheboygan Circuit Court of receiving and concealing stolen
property having a value over $100. The property involved was a
wood stock anchor which the defendant took from the bottom
of Lake Michigan. The anchor falls within the classification of
abandoned property of historical or recreational value found on
the bottom of the Great Lakes which pursuant to Michigan law
is the property of the State of Michigan. Defendant was sen-
tenced by the trial court, Robert C. Livo, J., to pay a fine of
$1,000 and was ordered to pay costs of $1,276.83. Later, the
trial court entered an order setting aside defendant's conviction
and granting his motion to quash. The people sought leave to
appeal and the Attorney General filed a motion to intervene.
The motion to intervene was granted and the applications for
leave to appeal by the people and the Attorney General were
granted. The appellants contend on appeal that the trial court
erroneously found Michigan's aboriginal records and antiquities
act unconstitutional "not per se but as applied to marine
salvage in the Great Lakes under the facts of this case, which
salvage is governed and preempted by [federal] admiralty law".
*Held:*

1. The statute declaring abandoned property of historical or

REFERENCES FOR POINTS IN HEADNOTES

[1, 11] 1 Am Jur 2d, Abandoned, Lost, and Unclaimed Property § 6.
    Uniform Disposition of Unclaimed Property Act. 98 ALR2d 304.
[2, 6, 8, 9] 2 Am Jur 2d, Admiralty §§ 3, 4, 10.
[3] 16 Am Jur 2d, Constitutional Law § 70 *et seq.*
[4, 12] 68 Am Jur 2d, Salvage § 40.
[5] 78 Am Jur 2d, Waters §§ 44, 45, 385.
[6] 78 Am Jur 2d, Waters §§ 384, 385.
[7] 16 Am Jur 2d, Constitutional Law § 221.
[8] 16 Am Jur 2d, Constitutional Law § 291.
[9] 2 Am Jur 2d, Admiralty § 14.
[10] 68 Am Jur 2d, Salvage § 1.
[11] 1 Am Jur 2d, Abandoned, Lost, and Unclaimed Property § 18 *et
    seq.*

recreational value found on the bottom of the Great Lakes to be state property is constitutional and does not interfere with federal maritime or admiralty law. With the passage of the statute, the state has not intruded or otherwise impermissibly interfered with the uniformity or purpose of admiralty and maritime law. Rather the state has supplemented the control over Great Lakes bottomlands granted to it by the Great Lakes Submerged Lands Act, MCL 322.701 *et seq.,* and the federal Submerged Lands Act, 43 USC 1301 *et seq.,* so as to include items of historical and recreational value located on or contained therein.

2. The Michigan statute under consideration in this case does not interfere with federal maritime law, but simply controls the preservation of historical, cultural or recreational articles, a matter traditionally within the competence of the state and within the concept of the state's police power.

3. The Michigan Legislature has recognized general principles of admiralty with regard to salvage and has, however, passed specific legislation which complements that law while protecting a valid public interest.

4. The jury could properly find that defendant had received and concealed state-owned property. The trial court erred in finding the statute unconstitutional and in setting aside defendant's conviction.

The information and defendant's conviction are reinstated.

1. ABANDONED AND LOST PROPERTY — ADMIRALTY — CONSTITUTIONAL LAW.

The statute declaring abandoned property of historical or recreational value found on the bottom of the Great Lakes to be state property is constitutional and does not interfere with federal maritime or admiralty law (MCL 299.51[2]; MSA 13.21[2]).

2. ADMIRALTY — FEDERAL JURISDICTION.

Maritime and admiralty matters are within the jurisdiction of the federal government (US Const, art III, § 2).

3. CONSTITUTIONAL LAW — SUPREMACY.

Federal law is supreme in areas where the constitution assigns jurisdiction to the federal government (US Const, art VI).

4. ADMIRALTY — SALVAGE.

The right to salvage is a matter governed by maritime or admiralty law.

5. WATERS AND WATERCOURSES — GREAT LAKES — PROPERTY —
   GREAT LAKES SUBMERGED LANDS ACT.

   Title and dominion over the actual lands which are covered by
   the waters of the Great Lakes and which are within state
   boundaries belong to each state within which those lands are
   located; in Michigan, the title to such lands is held in trust for
   the public pursuant to the Great Lakes Submerged Lands Act
   (MCL 322.701 *et seq.;* MSA 13.700[1] *et seq.).*

6. ADMIRALTY — WATERS AND WATERCOURSES — NAVIGATION — PROP-
   ERTY — CONSTITUTIONAL LAW.

   The United States Constitution does not give the federal govern-
   ment specific authority over the beds or bottomlands of naviga-
   ble waters, although the federal government, by virtue of its
   jurisdiction over maritime and admiralty matters, retains au-
   thority as to matters and issues relevant to navigation through
   the Great Lakes (US Const, art III, § 2).

7. STATUTES — JUDICIAL CONSTRUCTION.

   Statutes are presumed to be constitutional unless the contrary
   clearly appears; where there is doubt, every possible construc-
   tion not clearly inconsistent with the language of the statute
   and its subject matter is to be interpreted in favor of the
   statute's constitutionality.

8. ADMIRALTY — JURISDICTION — PREEMPTION — CONSTITUTIONAL
   LAW.

   Although the federal government retains jurisdiction over mari-
   time and admiralty matters, states retain significant autonomy,
   and in unpreempted areas the federal government has tradi-
   tionally deferred to the historic police power of the states;
   federal preemption of that power will not be dictated unless
   that was the clear and manifest purpose of Congress; federal
   preemption occurs only where federal and state laws inevitably
   collide, or where Congress has unmistakably expressed its
   intent to occupy the field (US Const, art III, § 2 and art VI).

9. ADMIRALTY — POLICE POWERS — JURISDICTION — CONCURRENT
   JURISDICTION.

   Michigan may act in the exercise of its police powers in maritime
   and admiralty matters concurrently with the federal govern-
   ment.

10. ADMIRALTY — WORDS AND PHRASES — SALVAGE.

    "Salvage" is defined, in terms of federal maritime or admiralty
    law, as the compensation allowed to persons by whose assis-
    tance a ship or her cargo has been saved, in whole or in part,

from impending peril on the sea, or in recovering such property from actual loss, as in cases of shipwreck, derelict, or recapture.

11. WATERS AND WATERCOURSES — ABANDONED MARITIME PROPERTY.

A government may proclaim itself owner of abandoned maritime property within its jurisdiction, but without a clear legislative statement to that effect, the courts should adhere to traditional maritime law principles of finder and salvor.

12. ADMIRALTY — SALVAGE.

Michigan recognizes general principles of admiralty with regard to salvage (MCL 570.402; MSA 26.342).

*Joseph P. Kwiatkowski,* Prosecuting Attorney, and *Robert J. Butts,* Assistant Prosecuting Attorney, for the people.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Terrence P. Grady* and *Russell E. Prins,* Assistants Attorney General, for the intervening plaintiff.

*Gillard, Bauer, Mazrum & Florip* (by *Roger C. Bauer),* for defendant on appeal.

Before: SHEPHERD, P.J., and ALLEN and A. E. KEYES,* JJ.

SHEPHERD, P.J. Defendant was convicted by a jury of receiving and concealing state-owned stolen property valued at over $100, MCL 750.535; MSA 28.803. He was sentenced to pay a fine of $1,000 and ordered to pay costs of $1,276.83. Later the trial court entered an order setting aside defendant's conviction and granting his motion to quash. The prosecutor and the Attorney General, as intervenor, appeal by leave granted. We reverse and reinstate the conviction. In so doing, we hold that the statute declaring abandoned property of historical or recreational value found on the bottom of the Great Lakes to be state property is

* Circuit judge, sitting on the Court of Appeals by assignment.

constitutional and does not interfere with federal maritime or admiralty law.

On August 24, 1981, defendant was observed proceeding through the Straits of Mackinac in a tugboat, apparently in possession of two wood stock anchors. At trial, defendant admitted taking a wood stock anchor from the bottom of Lake Michigan and claimed that he was salvaging the anchor for a friend as a favor for past services. The anchor was identified as a wood stock anchor believed to be off the sunken wreck, The Richard Winslow, which sank in the late 1800's and which was the first four-masted sailing vessel on the Great Lakes.

At defendant's jury trial, the jury was requested to make a determination under MCL 299.51; MSA 13.21 whether the anchor in question had significant historical or recreational value since, under that statute, the State of Michigan had reserved to itself a possessory right to property found on the bottom of the Great Lakes which had either significant recreational or historical value. The anchor was valued at approximately $1,800, unrestored. On May 12, 1982, the jury returned its verdict finding defendant guilty.

On October 28, 1982, after defendant was sentenced, the trial court set aside defendant's conviction and granted his motion to quash, finding that MCL 299.51 *et seq.;* MSA 13.21 *et seq.,* was unconstitutional as it applied to marine salvage and that the anchor, therefore, was not the property of the state. The trial court found the statute unconstitutional "not per se but as applied to marine salvage in the Great Lakes under the facts of this case, which salvage is governed and preempted by [federal] admiralty law * * *".

Maritime and admiralty matters are within the

jurisdiction of the federal government. Article III, § 2 of the United States Constitution provides that the judicial power of the United States "shall extend * * * to all Cases of admiralty and maritime Jurisdiction * * *". Where the constitution assigns jurisdiction to the federal government, federal law is supreme, "any Thing in the Constitution or Laws of any State to the Contrary notwithstanding". US Const, art VI, clause 2. The right to salvage is a matter governed by maritime or admiralty law. *Mason v The Blaireau,* 6 US (2 Cranch) 240; 2 L Ed 266 (1804); *Treasure Salvors, Inc v Abandoned Sailing Vessel Believed to be the Nuestra Senora De Atocha,* 408 F Supp 907 (SD Fla, 1976), *aff'd with modification* 569 F2d 330 (CA 5, 1978).

Title and dominion over the actual lands which are covered by the waters of the Great Lakes and which are within state boundaries belong to each state within which those lands are located. In Michigan, the title to such lands is held in trust for the public pursuant to the Great Lakes Submerged Lands Act, MCL 322.701 *et seq.;* MSA 13.700(1) *et seq.* It is clear, therefore, that the actual land upon which submerged ships or other property lie or are partially embedded belongs to the State of Michigan subject to a trust for the benefit of the public. Although the federal government, by virtue of its jurisdiction over maritime and admiralty matters, retains authority as to matters and issues relevant to navigation through the Great Lakes, the United States Constitution gives the federal government no such specific authority over the beds or bottomlands of navigable waters. *Nedtweg v Wallace,* 237 Mich 14, 16; 208 NW 51 (1927). See also *Hilt v Weber,* 252 Mich 198, 202-203; 233 NW 159 (1930).

By virtue of its 1980 amendment of the aborigi-
nal records and antiquities act, MCL 299.51 *et
seq.;* MSA 13.21 *et seq.,* the Michigan Legislature
proclaimed state ownership and authority over
property of historical or recreational value found
on the "state owned bottomlands of the Great
Lakes". The state declared its interest to be supe-
rior to that of a finder of such abandoned prop-
erty.[1] The critical question in the instant case is
whether the state may declare its ownership of
submerged property or whether such assertion of
ownership is in conflict with federal preemption of
maritime and admiralty matters.

In general, statutes are presumed to be constitu-
tional unless the contrary clearly appears. Where
there is doubt, every possible construction not
clearly inconsistent with the language of the stat-
ute and its subject matter is to be interpreted in
favor of the statute's constitutionality. *Royal Auto
Parts v Michigan,* 118 Mich App 284; 324 NW2d
607 (1982); *Nunn v George A Cantrick Co, Inc,* 113
Mich App 486; 317 NW2d 331 (1982).

Although the federal government retains juris-
diction over maritime and admiralty matters,
states retain significant autonomy, and in un-
preempted areas, the federal government has tra-
ditionally deferred to the historic police power of
the states. Federal preemption of that power will
not be dictated "unless that was the clear and
manifest purpose of Congress". *Rice v Santa Fe
Elevator Corp,* 331 US 218, 230; 67 S Ct 1146; 91 L
Ed 1447 (1947). In the exercise of its police powers,

---

[1] The pertinent statutory provision provides as follows:

"(2) The state reserves to itself a possessory right or title superior
to that of a finder to abandoned property of historical or recreational
value found on the state owned bottomlands of the great lakes. This
property shall belong to this state with the administration and
protection vested in the department of natural resources and the
secretary of state." MCL 299.51(2); MSA 13.21(2).

or presumably in other related areas in which it has retained autonomy, Michigan may act in maritime and admiralty matters concurrently with the federal government. See *Huron Portland Cement Co v Detroit,* 362 US 440; 80 S Ct 813; 4 L Ed 2d 852 (1960). Only where federal and state laws inevitably collide, or where Congress has unmistakably expressed its intent to occupy the field, does federal preemption occur. *Florida Lime & Avocado Growers, Inc v Paul,* 373 US 132, 142; 83 S Ct 1210; 10 L Ed 2d 248 (1963).

While in *The Lottawanna,* 88 US (21 Wall) 558, 574; 22 L Ed 654 (1874), the Supreme Court found that federal jurisdiction extended to "all cases of admiralty and maritime jurisdiction", we find that, with passage of MCL 299.51, the State of Michigan has not intruded or otherwise impermissibly interfered with the uniformity or purpose of admiralty and maritime law. Rather, the state has supplemented the control over Great Lakes bottomlands granted to it by the Great Lakes Submerged Lands Act and the federal Submerged Lands Act, 43 USC 1301 *et seq.,* so as to include items of historical and recreational value located on or contained therein.

As generally defined, at least in terms of federal maritime or admiralty law, salvage is "the compensation allowed to persons by whose assistance a ship or her cargo has been saved, in whole or in part, from impending peril on the sea, or in recovering such property from actual loss, as in cases of shipwreck, derelict, or recapture". *The Blackwall,* 77 US (10 Wall) 1, 12; 19 L Ed 870 (1870). As to marine property which has been abandoned, it appears generally that a government may proclaim itself owner of abandoned property within its jurisdiction, but without a clear legislative

statement to that effect, the courts should adhere to traditional maritime law principles of finder and salvor. *United States v Tyndale,* 116 F 820, 823 (CA 1, 1902); *Murphy v Dunham,* 38 F 503, 510 (E Mich, 1889). Defendant relies on a federal court decision in *Cobb Coin Co, Inc v The Unidentified Wrecked & Abandoned Sailing Vessel,* 525 F Supp 186 (SD Fla, 1981), in support of his argument that the state's statutory claim to submerged articles impermissibly interferes with federal maritime jurisdiction. We do not read the decision in *Cobb,* even were we to find its holding persuasive, to preclude the state's exercise of authority in the instant case. *Cobb* is significantly distinguishable. In that case, the court did not rule that a state could not, by legislation, lay claim to submerged property. Rather, it determined that the Florida statutory scheme conflicted with federal maritime principles. The first conflict found by the court was the limitation upon exploration imposed by the statute. Only licensees who were granted licenses by the state to explore particular areas could investigate those areas for possible salvagable goods. In Michigan, however, permits are required only to bring up specific items, and exploration of particular areas is in no way limited to holders of permits. In conformity with maritime law principles, therefore, potential salvors in Michigan are free to explore the open waters. The second objectionable ground found by the federal court in *Cobb* was the Florida statute's lack of regard for a licensee's diligence or success. Traditionally, maritime law protects the right of a salvor who undertakes a project to carry it to completion without interference from others who seek to share in the enterprise and the reward. Due diligence must be exercised, however, and the salvor must seek to be successful. The Michigan statute, unlike the con-

tested Florida statute, conforms to traditional maritime principles in that it does not purport to limit exploration itself to certain licensees without regard to their diligence or success. Rather, the waters of the Great Lakes remain open to preliminary exploration by all, and permits must be sought only by those who seek to bring up particular items already discovered. Finally, in *Cobb,* the federal court objected to Florida's system of fixed salvor compensation as provided by statute. The Michigan statute, however, has no such fixed compensation rule, but allows for potential compensation by the state or for retention of the recovered property by the salvor. The federal court noted that the Supreme Court had "recognized historic preservation as a valid state concern", but simply ruled in *Cobb* that "a state may not enact legislation in that area in such a way as to interfere, as do portions of Florida's licensing statute, with the uniformity required by maritime law". *Cobb,* p 212. We find that the Michigan statute under consideration in the instant case does not interfere with federal maritime law, but simply controls the preservation of historical, cultural or recreational articles, a matter traditionally within the competence of the state and within the concept of the state's police power. See *Cobb, supra,* p 212.

The Michigan Legislature has recognized general principles of admiralty with regard to salvage. MCL 570.402; MSA 26.342. It has, however, passed specific legislation which complements that law while protecting a valid public interest, *i.e.,* the public trust of articles possessing historic and recreational value which are located on the bottom of the Great Lakes. The Michigan statutes proclaiming state ownership of such items and requiring permits for their salvage are not contrary to

the traditional purpose of allowing salvage under admiralty law. They in no way interfere with the return of items to their rightful owners, nor do they limit vigorous exploration by salvors. They simply protect the state's interest in preserving its heritage for the use and enjoyment of its citizens.

In the instant case, we find no impermissible state interference with federal admiralty or maritime law so as to make the statutes construed here invalid. Since MCL 299.51 is a valid establishment of state ownership of historic or recreational property, and defendant does not dispute the allegation that the anchors involved here fall within that classification, the jury could properly find that defendant had received and concealed state-owned property. The trial judge therefore erred in finding the statute unconstitutional and in setting aside defendant's conviction.

The information and defendant's conviction are reinstated.