*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CAI LIQUIDATING, INC. and J & A PROPERTY HOLDINGS, LLC,

Plaintiffs-Appellants,

v

MICHIGAN DEPARTMENT OF ENVIRONMENT, GREAT LAKES, AND ENERGY,

Defendant-Appellee.

UNPUBLISHED
November 10, 2022

No. 358278
Court of Claims
LC No. 20-000164-MZ

Before: HOOD, P.J., and JANSEN and K. F. KELLY, JJ.

PER CURIAM.

Plaintiffs, CAI Liquidating, Inc. (CAI) and J & A Property Holdings, LLC (J & A), appeal as of right the Court of Claims opinion and order dismissing the matter for lack of an actual controversy, and granting summary disposition in favor of defendant, the Michigan Department of Environment, Great Lakes, and Energy. We vacate the opinion and order of the Court of Claims, and remand for a determination on the merits.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a dispute between the parties regarding whether defendant has jurisdiction to order plaintiffs to perform corrective action at its hazardous waste facility under the Michigan Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq*. When waste management spills or releases hazardous material into the environment, Part 111 of the NREPA, MCL 324.11101 *et seq.*, requires corrective action by the owner or operator of the facility, which may include an investigation, assessment, or cleanup of the contaminated air, groundwater, surface water, soil, or sediments. MCL 324.11115a.

Chemical Analytics, Inc. (CAI's former business operating name) operated a hazardous waste treatment, storage, and disposal facility at 29959 Beverly Road, in Romulus, under Part 111 of the NREPA. Chemical Analytics operated under a Part 111 operating permit for treatment and storage of hazardous waste from 2002 until 2015. Around March 1, 2015, Stericycle Specialty Waste Solutions, Inc. (Stericycle) purchased the operating name "Chemical Analytics" and all of

its assets, except the property and the buildings on the property. J & A is the current owner of the property and its buildings ("the facility").

When plaintiffs began closing the facility, disputes arose between the parties regarding whether corrective action needed to be performed. Various studies conducted at the facility showed levels of arsenic, selenium, zinc, and benzo(a)pyrene that exceeded statutory cleanup criteria levels. Plaintiffs hired PM Environmental, Inc. (PM) throughout the years to conduct evaluations at the facility. Contrary to PM's conclusions, defendant believed that a release occurred at the facility, therefore triggering corrective action under Part 111. Plaintiffs asserted that there was no evidence of a release, and the contaminants found in the soil were naturally occurring. Defendant suggested corrective action in the form of a restrictive covenant limiting the use of the property to nonresidential, and to maintain a concrete slab foundation to act as an infiltration barrier. Plaintiffs contested these recommendations, and no order or consent agreement was ever entered requiring corrective action.

Thus, in August 2020, plaintiffs filed a one-count complaint for declaratory judgment in the Court of Claims, seeking a declaration that defendant lacked authority under Part 111 to impose corrective action on plaintiffs where there was no evidence of release. The parties each filed competing motions for summary disposition. However, in July 2021, on its own motion, the Court of Claims ordered the parties to file supplemental briefs regarding whether plaintiffs could seek declaratory relief when no corrective action was ordered, whether plaintiffs' action was premature, and whether an actual controversy existed between the parties giving rise to an action for declaratory relief.

The parties each filed briefs, and plaintiffs argued that defendant "effectively ordered" corrective action at the facility, creating an actual controversy. Defendant asserted that no formal order or consent order was ever entered, plaintiffs' injuries were hypothetical, and therefore, no actual controversy existed. The Court of Claims agreed with defendant, dismissed plaintiffs' complaint for lack of an actual controversy, and granted defendant summary disposition. Plaintiffs now appeal.

## II. STANDARD OF REVIEW

The lower court decision whether to grant or deny declaratory relief is reviewed for an abuse of discretion. *The Reserve at Heritage Village Ass'n v Warren Fin Acquisition, LLC*, 305 Mich App 92, 104; 850 NW2d 649 (2014). "An abuse of discretion occurs when a trial court's decision is not within the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted). A trial court's decision regarding a motion for summary disposition in a declaratory-judgment action is reviewed de novo. *Little v Kin*, 249 Mich App 502, 507; 644 NW2d 375 (2002), aff'd 468 Mich 699 (2003). "Questions regarding ripeness are also reviewed de novo." *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 542; 904 NW2d 192 (2017) (quotation marks and citation omitted).

## III. ANALYSIS

Plaintiffs argue that the trial court erred by dismissing its complaint for a declaratory judgment because an actual controversy did exist. We agree.

MCR 2.605 is the court rule governing a trial court's authority to enter a declaratory judgment. MCR 2.605(A)(1) states: "In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." The decision whether to grant declaratory relief is within the sound discretion of the trial court. *Van Buren Charter Twp*, 319 Mich App at 545.

> When there is no actual controversy, the court lacks jurisdiction to issue a declaratory judgment. Thus, the existence of an "actual controversy" is a condition precedent to the invocation of declaratory relief. An actual controversy exists when a declaratory judgment is necessary to guide the plaintiff's future conduct in order to preserve the plaintiff's legal rights. It is not necessary that actual injuries or losses have occurred; rather [that] plaintiffs plead and prove facts which indicate an adverse interest necessitating a sharpening of the issues raised. [*Id*. at 545-546 (quotation marks and citations omitted; alteration added).]

Defendant's authority to order corrective relief under Part 111 of the NREPA is provided in MCL 324.11115a, which provides:

> (1) Beginning on June 4, 1992, the owner or operator, or both, of a facility specified in this subsection is subject to the corrective action requirements specified in this part and the rules promulgated under this part for all releases of a contaminant from any waste management unit at the facility, regardless of when the contaminant may have been placed in or released from the waste management unit. This requirement applies to a facility for which the owner or operator, or both, is applying for or has been issued a license under this part.

> (2) Beginning on June 4, 1992, if the department, on the basis of any information, determines that there is or has been a release of a contaminant from any waste management unit at the facility, the department may order, or may enter a consent order with an owner or operator, or both, of a facility specified in subsection (1), requiring corrective action at the facility. . . .

There is no dispute that defendant never entered an order or consent order requiring plaintiffs to perform corrective action under MCL 324.11115a(2). Plaintiffs concede this point on appeal. The parties negotiated for years what corrective action was appropriate, i.e., the restrictive covenant restricting the land to nonresidential use and the maintenance of a concrete slab foundation to act as an infiltration barrier. Plaintiffs were provided with draft consent agreements, but refuted the terms, so they were never signed or entered. Defendant has not offered any reason why it has not entered a formal order for corrective action up to this point.

Thus, the actual controversy that exists between the parties is whether defendant has jurisdiction to order plaintiffs to perform corrective action where, as alleged by plaintiffs, there is no evidence of a release of contaminants at the facility. The parties have debated this point for years, culminating in this litigation, and there can be no resolution of the issue without declaratory relief. As long as defendant fails to enter a formal order, plaintiffs will dispute the terms of any draft consent agreement, rendering the sale of the property at a stalemate to the detriment of

plaintiffs. Thus, plaintiffs have sufficiently "plead[ed] and prove[n] facts which indicate an adverse interest necessitating a sharpening of the issues raised." *Van Buren Charter Twp*, 319 Mich App at 546 (quotation marks and citation omitted). Although the Court of Claims deemed this issue hypothetical, and "there [] must be a present legal controversy, not one that is merely hypothetical or anticipated in the future," *League of Women Voters of Mich v Secretary of State*, 506 Mich 561, 586; 957 NW2d 731 (2020) (quotation marks and citation omitted), a controversy exists here because the parties have disputed corrective action for years, and a declaratory judgment is necessary for a resolution.

The parties dispute the application of *Flanders Indus, Inc v Michigan*, 203 Mich App 15; 512 NW2d 328 (1993) to the facts at hand.[1] In *Flanders*, the plaintiff purchased an industrial plant on Lake Michigan, and the previous owner had discharged contaminants into the water. *Id*. at 18-19. The Michigan Department of Natural Resources (DNR, a predecessor of defendant), notified the plaintiff that it was responsible for remediating the contamination under a previous version of the NREPA, and the plaintiff incurred expenses for inspecting, testing, monitoring, and removing the contaminants. *Id*. at 19. The plaintiff moved for declaratory relief seeking a determination that it was not liable for the cost of cleaning up the lake, and the trial court denied the request because it was premature. *Id*. at 20. This Court determined that the plaintiff could not obtain a declaratory judgment of nonliability "*before* the DNR has initiated a cost recovery action." *Id*. at 21 (emphasis added). The plaintiff's " 'right' to avoid liability for the clean-up costs can be determined just as effectively after the DNR has instituted a cost recovery action as before." *Id*. at 23. Therefore, no actual controversy existed at the time of the suit. *Id*.

The facts of this case are distinguishable from *Flanders* because defendant *has initiated* corrective action proceedings. Defendant has directed plaintiffs to produce studies of the property and has attempted to enter a consent agreement for corrective action for years. Defendant requested that plaintiffs submit a work plan for corrective action in 2016. For unknown reasons, defendant has not entered a formal order. Plaintiffs, therefore, are in need of declaratory relief and a determination of this case on the merits.

Therefore, the Court of Claims abused its discretion when it determined that there was no actual controversy between the parties, and improperly dismissed plaintiffs' complaint for declaratory relief and granted defendant summary disposition.[2]

---

[1] Plaintiffs argue that this case is distinguishable and nonbinding because it relies on federal caselaw. Although lower federal court decisions are not binding on this Court but merely persuasive, *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004), the *Flanders* decision itself remains good law. See *Straman v Lewis*, 220 Mich App 448, 451; 559 NW2d 405 (1996), citing MCR 7.215(C)(2) (the publication of an opinion of this Court creates binding precedent until our Supreme Court enters a decision altering this Court's decision or its rationale).

[2] This renders discussion of defendant's alternative argument that plaintiffs failed to exhaust administrative remedies unnecessary.

The Court of Claims opinion and order is vacated, and this matter is remanded to the Court of Claims for a determination on the merits. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly