## EYDE v STATE OF MICHIGAN

Docket No. 30438. Submitted November 7, 1977, at Lansing.—Decided April 17, 1978. Leave to appeal applied for.

Complaint by Patrick Eyde and Michael Eyde against the State of Michigan and The Charter Township of Delta for an injunction to prevent the construction of a sewer across the plaintiffs' land. An injunction was granted by the Ingham County Circuit Court, Thomas L. Brown, J., permanently enjoining the defendants from using an easement across plaintiffs' land obtained in a prior condemnation proceeding providing that the plaintiffs would present an alternate route for the easement and that a master would be appointed if defendants were to use a certain portion of the existing easement. That judgment was appealed, reversed by the Court of Appeals (Docket No. 20210, memorandum opinion of July 26, 1974), reinstated by the Supreme Court, 393 Mich 453 (1975), and remanded to the circuit court. Upon remand the parties stipulated to an alternate route for the easement, and an amended judgment was entered, with the appointment of masters to manage the project. Construction of the sewer was completed, and at a later hearing the court adopted one of two plans submitted for restoration of the property. The defendants appeal by leave granted, contending that the trial court improperly expanded the Supreme Court directive in its remand by extending the jurisdiction of the masters to cover the entire project and by improperly adding reforestation requirements, and that the trial court improperly exercised its discretion by ordering restoration of the easement so as to prevent vehicular access to the sewer for repair and maintenance. *Held:*

1. The jurisdiction of the masters was not improperly extended to cover the alternative easement route because the

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 744, 746, 747.

[2, 3] 20 Am Jur 2d, Courts §§ 4, 88, 91, 111 *et seq.*

[4] 5 Am Jur 2d, Appeal and Error § 703.

[5] 25 Am Jur 2d, Easements § 86.

Correlative rights of dominant and servient owners in right of way for pipeline. 28 ALR2d 626.

order of the Supreme Court provided general authorization for appointment of a master regardless of the location of any restoration project.

2. Reforestation was properly ordered to adequately resolve environmental questions raised.

3. The trial court's restoration order regarding access to the sewer was not an improper exercise of discretion.

Affirmed.

1. APPEAL AND ERROR—REMAND—INSTRUCTIONS OF SUPREME COURT.

The Court of Appeals is bound by instructions expressed by the Supreme Court in a case which the Supreme Court remands to the trial court and where the trial court's decision on remand is appealed.

2. COURTS—SUPREME COURT—TRIAL COURT—APPEAL AND ERROR—OR-DER OF COURT—IMPLEMENTATION OF ORDER—EASEMENTS—AP-POINTMENT OF MASTER.

A trial court did not erroneously expand the jurisdiction of a master in its implementation of an order of the Supreme Court regarding the granting of a sewer easement and the appoint-ment of a master to oversee any necessary restoration of the property where the location of the easement was changed by stipulation of the parties, and where the Supreme Court order provided general authorization for appointment of a master to oversee any restoration plans anywhere proposed.

3. COURTS—ORDER OF COURT—IMPLEMENTATION OF ORDER—RESTORA-TION OF PROPERTY.

A trial court properly included reforestation of a plaintiff's prop-erty after construction of a sewer across the land as a part of a restoration plan in which the court was implementing an earlier order calling for restoration of the land, even though the earlier order did not expressly mention trees and shrubs, where restoration of the kind ordered was necessary to ade-quately resolve the environmental questions raised in the case.

4. APPEAL AND ERROR—EQUITY—DE NOVO REVIEW—ENVIRONMENTAL PROTECTION ACT—STATUTES.

The Court of Appeals reviews *de novo* cases brought under the Michigan Environmental Protection Act; however, as a general rule in equity cases, great weight is accorded to the findings of the trial judge (MCLA 691.1201 *et seq.;* MSA 14.528[201] *et seq.).*

5. EASEMENTS—PIPELINES—COURTS—ORDERS OF COURTS—ACCESS—
   MAINTENANCE AND REPAIR.
   Generally, an owner of a pipeline easement is entitled to reasona-
   ble' access to the land for maintenance and repair purposes; a
   trial court's order directing reforestation of an easement, after
   construction of a sewer, in a manner which prevents vehicular
   travel across the easement is not unreasonable on its face
   where the court specified that the owners of the easement can
   seek a court order at any time that access to the sewer for
   maintenance becomes necessary.

*Sinas, Dramis, Brake, Turner, Boughton, Mc-
Intyre & Reisig, P. C.,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Charles D.
Hackney,* Assistant Attorney General, for defend-
ant State of Michigan.

*Abood, Abood & Abood, P. C.* (by *William E.
Rheaume)* for defendant Charter Township of
Delta.

Before: QUINN, P. J., and V. J. BRENNAN and
C. L. BOSMAN,* JJ.

V. J. BRENNAN, J. Defendants State of Michigan
and Charter Township of Delta appeal from the
interlocutory order of Ingham Circuit Judge
Thomas L. Brown on September 21, 1976, requir-
ing them to proceed with reforestation of plaintiff's
property pursuant to an original sewage facility
condemnation proceeding begun in 1970. Defend-
ants appeal by leave granted November 1, 1976,
including provision for immediate consideration
and stay of trial proceedings. A brief summary of
the lengthy history of this case is necessary to
clarify our resolution of this appeal.

On February 11, 1970, Delta Township filed a

* Circuit judge, sitting on the Court of Appeals by assignment.

complaint in Eaton County Circuit Court to condemn an easement against the Eyde property and that of Pearl Myers Horst. The easement was necessary to install a 30-inch pipe to provide sewage disposal facilities for the state's secondary office complex located west of the City of Lansing in Windsor Township of Eaton County. A further purpose was to use the Carrier Creek interceptor extension as a principal sewage disposal system for future development of Delta Township.

A condemnation jury awarded the property owners $6,000. On appeal, we affirmed with Judge TARGONSKI dissenting. *Delta Township v Eyde,* 40 Mich App 485; 198 NW2d 918 (1972). The Michigan Supreme Court reversed us and adopted the dissenting view that the easement was limited to 50 feet, not 50 feet "and sufficient area for construction". *Delta Township v Eyde,* 389 Mich 549, 555–556; 208 NW2d 168 (1973). However, being persuaded that the $6,000 was intended to compensate for only the 50-foot easement, the Court found no need for a new trial. The cause was thus remanded to the circuit court for amendment of the judgment in conformity with the jury award by deleting the words "and sufficient area for construction".

On December 13, 1973, the present action was started as an equity suit in Ingham County Circuit Court, seeking to enjoin the construction of the sewer as violative of the Environmental Protection Act of 1970, effective October 1, 1970. MCLA 691.1201 *et seq;* MSA 14.528 (201) *et seq.*

On April 30, 1974, Ingham County Circuit Judge Thomas L. Brown entered a final order (judgment) pursuant to an order of the Supreme Court on April 2, 1974, issued in response to a motion by defendants, in holding that the matters presented were not the same as presented in the condemna-

tion action and so not precluded by the principle of res judicata. Judge Brown also found that the sewer "threatened ecological damage to the Carrier Creek as it crosses the property owned by plaintiffs Eyde, [and] additional damage down stream in the Carrier Creek to the Grand River into Lake Michigan". The judgment permanently enjoined defendant township and the State of Michigan from using the easement acquired in the condemnation action and provided that plaintiffs Eyde would furnish a legally described alternate 50-foot easement for consideration. Were plaintiff unable to furnish such alternate easement, then a second legally described alternative would be necessary. Provision was included for appointment of a master were defendants to use "that portion of the present easement across Plaintiffs' land from manhole 12 North".[1]

On appeal, we reversed Judge Brown's ruling by opinion of this Court dated July 26, 1974 (memorandum opinion, Docket No. 20210). The Supreme Court reversed our decision in its order of January 21, 1975. *Eyde v State of Michigan,* 393 Mich 453; 225 NW2d 1 (1975). The Court there reinstated the order of the Ingham County Circuit Court, giving various reasons for its decision.[2]

---

[1] "5. If Defendants use that portion of the present easement across Plaintiffs' land from manhole 12 North, then a master will be appointed by the Court to view the premises from manhole 12 thence North prior to construction and determine what protective steps may be taken to conserve the environment."

[2] "1. The overriding need to achieve finality. This matter, which has been pending since 1970, should be brought to an immediate, conclusive determination. Litigation has caused delays in construction which have severely taxed the financial resources of this state and neighboring property owners. To dismiss plaintiffs' suit could only cause further delay since other persons, not a party to the condemnation proceeding, have the right under the EPA to seek an injunction against the drain project as presently planned. Res judicata is designed to insure finality of litigation. In this case finality can be better achieved by not dismissing plaintiffs' action.

The questions now before us involve matters which have occurred upon remand from that order to the circuit court. On August 8, 1975, the parties stipulated to an alternative route for the easement, referred to as Alternative C.[3] An amended judgment was entered that same day incorporating this alternative easement route. John Cushing and Ray White were appointed as masters to manage the project. Construction of the sewer then commenced but was delayed because of several legal challenges by Pearl Mowrer, formerly Pearl Myers Horst, both in state and Federal court. On August 29, 1975, plaintiffs obtained a temporary restraining order on the theory that the masters had not yet submitted reports to the court for approval. At the show cause hearing, the question arose whether the masters' authority extended to the

"2. The prejudice, if any, to the defendants is minimal. The defendants will have an easement accomplishing the same objective as the original one and the trial court opined 'it is no more costly'.

"3. This action raises environmental issues of great significance which are of interest and concern to many. The impact on the environment resulting from the construction of the sewer across plaintiffs' property as presently planned extends well beyond the boundaries of plaintiffs' property. The trial judge found that the project would pollute, impair and destroy natural resources reaching from the lower Carrier Creek to the Grand River and into Lake Michigan.

"4. At the time of trial the EPA had only recently become law. It is not surprising that the plaintiffs, lacking an understanding that they might raise an EPA issue in a condemnation proceeding, did not do so.

"Our holding today is restricted to the unique facts of this case." *Eyde v State of Michigan, supra* at 455–456.

[3] "Beginning on the North-South 1/4 line of Section 22 at a point 410 feet South of the Center of Section 22 and running thence S 62° 09' 40" E 95 feet, thence N 68° 11' 20" E 118.5 feet, then N 88° 09' 40" E 102.7 feet, thence S 59° 04' E 129.0 feet, thence S 51° 41' 20" E 89.25 feet, thence S 26° 41' 40" E 117.7 feet, thence S 7° 39' 40" W 110.3 feet, thence S 28° 19' 20" W 457.65 feet, thence S 33° 02' W 226.75 feet, thence S 16° 38' 40" E 178.5 feet, thence S 26° 59' 20" E 269.0 feet to a point 350 feet East of the North-South 1/4 line, thence South parallel to said North-South 1/4 line 887.6 feet, more or less to the South line of Section 22 and a point of ending." Stipulation for Amended Judgment, p 3.

entirety of Alternative C. No clear answer emerged at this hearing.

The temporary restraining order was dissolved on September 8, 1975. At a meeting of the masters on October 7, 1975, the court did rule that the masters' jurisdiction included the entire project. Though disputed on appeal, the matter of planting trees equal in number to those removed and whether space would be left for access by vehicles for inspection, maintenance and repair purposes emerged for consideration.

Despite the constant litigation, construction of the sewer was completed on January 12, 1976. At a hearing on September 7, 1976, the court heard testimony concerning two restoration plans. After receiving testimony, the plan submitted by Dr. Stevens was adopted. This plan proposed that the land be restored as closely as possible to its pre-construction condition. Under this plan, access to the easement by vehicles was not discussed. The estimated cost of the plan was $67,000. Dr. Stevens was substituted for Ray White as a master for the project. The court retained jurisdiction.

Delta Township moved for rehearing or clarification due to the failure of the plan to provide for vehicular access to the easement. On September 28, 1976, an evidentiary hearing was held and evidence of the need for access and changes required to obtain such access was presented. The court denied the motion, noting that in the future the township could gain access to the sewer for maintenance by seeking a court order providing for the removal of obstacles to any necessary equipment. Defendants appeal from the order of September 21, 1976, adopting the Stevens recommendation for restoration.

On appeal, defendants raise two principal allegations of error.

Defendants first argue that the trial court on remand improperly expanded the directive of the Michigan Supreme Court by extending the jurisdiction of the masters to cover the entire project and by improperly adding reforestation requirements.

The Supreme Court expressly reinstated the trial court's order of April 30, 1974. We are bound by the instructions expressed there.[4] *Theisen v City of Dearborn,* 48 Mich App 571, 573; 210 NW2d 777 (1973).

The trial court's order arguably provided for the appointment of a master concerning both (1) environmental problems incident to actual construction of any sewer involving "that portion of the present easement across Plaintiffs' land from manhole 12 North" and (2) any problems encountered generally in restoring the property to its original condition. The new easement route, termed Alternate C, to which the parties stipulated after remand from the Supreme Court on August 8, 1975, contained similar provision for appointment of a master as originally provided in the order of April 30, 1974.[5] The amended judgment of August 8, 1975, incorporated such provision in the following terms:

"NOW THEREFORE IT IS ORDERED that Defendant, The Charter Township of Delta, be and is hereby

---

[4] The Supreme Court noted several specific reasons for reversing this Court and reinstating the trial court order of April 30, 1974. *See* note 2, *supra.*

[5] "It is hereby STIPULATED AND AGREED that the aforementioned legal description be ordered by this Court to be the easement within which the Carrier Creek Interceptor Extension is to be constructed in accordance with the Judgment of the Ingham County Circuit Court dated April 30, 1974; that all the other terms and conditions of the Judgment of April 30, 1974, and continued herein, including but not limited to the fact that a master will need to be appointed by the Court." Stipulation for Amended Judgment, p 3.

granted an easement to the following described property for the purposes of constructing the Carrier Creek Interceptor Extension, which construction shall be accomplished under the terms and conditions of the previous Judgment entered in this Court on April 30, 1974, including but not limited to the appointment of a master to oversee the construction of the sewer along Alternate C, under the same circumstances as contained within the Judgment of April 30, 1974 * * * ."

We hold that the trial court did not err in its implementation of the Supreme Court order reinstating the trial court's own judgment of April 30, 1974, when the court extended the provision for a master concerning restoration to the new Alternate C easement route. Ample evidence, including the trial court's own interpretation of its previous order and the stipulation of the parties, supports the interpretation that the order of April 30, 1974, provided general authorization for appointing a master to oversee any necessary restoration plans *anywhere* proposed, thus including the later Alternate C easement route adopted by the parties. We find this interpretation renders the trial court order of April 30, 1975, the Supreme Court order of January 21, 1975, and subsequent trial court orders more reasonable, effective and conclusive. *Hendrie v Lowmaster, 152 F2d 83, 85 (CA 6, 1945).*

We also find that the order of April 30, 1974, authorized restoration measures. The language of the order unequivocally calls for restoration of the land, and the subsequent interpretations by the court of its own language simply reinforce this conclusion. Although the order of April 30, 1974, did not mention trees and shrubs by name, we have no reason to believe the Supreme Court would have acted any differently in remanding the case had such a reference been expressly included.

Certainly, the removal of trees constitutes destruction of natural resources under MCLA 691.1202; MSA 14.528(202) and MCLA 691.1203; MSA 14.528(203). If we were to consider that the Supreme Court limited its reinstatement of the trial judge's order to water pollution measures only, we would be blind to the environmentally sensitive thrust of that high court order and inevitable implication that restoration of the total environment would be necessary to answer problems in this case arising under the act. Restoration of the kind ordered by the court pursuant to the Stevens plan is necessary to adequately resolve the environmental questions raised by plaintiff and addressed by the trial court's commendable supervision incident to restoring plaintiff's property.

Defendants contend next that the trial court improperly exercised its discretion by ordering restoration of the easement route so as to prevent vehicular access to the sewer for repair and maintenance purposes.

Note can be made here that we review cases brought under the Michigan Environmental Protection Act *de novo*. *Ray v Mason County Drain Commissioner,* 393 Mich 294, 303; 224 NW2d 883 (1975). However, as a general rule in equity cases, we accord great weight to the findings of the trial judge. *Kropf v Sterling Heights,* 391 Mich 139, 164; 215 NW2d 179 (1974) (concurring opinion). We find the trial judge in this case correctly followed statutory procedures when he determined that the intended use of defendant's easement would destroy natural resources of the state and that a feasible alternative permitting environmentally safe construction existed. See *Ray v Mason County Drain Commissioner, supra.*

We do not find the Stevens' plan adopted by the

trial court violative of the Supreme Court order issued January 21, 1975. The Supreme Court merely observed that the prejudice to defendants in cost terms would be minimal in their opinion under the order as constituted by the trial court on April 30, 1974. We do not find the statement of opinion by the Supreme Court to be a limiting mandate on the possible options open to the trial court on remand. We do not find that this vague statement by the Court can serve to reverse the careful planning incident to the restoration of plaintiff's property accomplished since then. We do not find the figures incident to the Stevens' plan unreasonable or so prejudicial as to constitute clear error. We affirm these costs.[6]

We also find the trial judge ruled correctly in response to defendant's contention that vehicular access to the manholes along the sewer is necessary for repair and maintenance purposes. As a general rule, an owner of a pipeline easement is entitled to reasonable access to the land for maintenance and repair purposes. Anno., *Correlative rights of dominant and servient owners in right of way for pipeline,* 28 ALR2d 626, 630. We find on the record the trial court specified to defendants that were access to the sewer for maintenance purposes necessary defendants might seek a court order to that effect. The court observed that removal of any obstacles in proper maintenance or

---

[6] Defendants' argument that plaintiffs would be compensated twice is without merit. Plaintiffs were given $6,000 for an easement which is defined as "a right which one person has to *use* the land of another for a specific purpose" *St. Cecilia Society v Universal Car & Service Co,* 213 Mich 569, 576–577; 182 NW 161 (1921) (emphasis added). The money paid out in the condemnation proceeding was for the use of the land, not for the trees themselves. Moreover, the Environmental Protection Act action is one essentially for the benefit for the state and its inhabitants. Although the presence of the trees upon the easements may eventually inure to the benefit of plaintiff, such benefit should not be construed as compensation of any sort.

repair might be sought at that time. Though a more flexible response to this problem would have been both desirable and permissible under the original order of April 30, 1974, access was not precluded altogether. We do not find the court's response unreasonable on its face and find no grounds for reversal or remand.

Having carefully reviewed defendants' arguments and finding none persuasive, we sustain the trial court's order requiring the parties to proceed with restoration. This Court's stay order is hereby vacated and set aside. We retain no further jurisdiction.

Affirmed.

QUINN, P. J., did not participate.