*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

RICHARD SLATER and PEGGY SLATER,

        Plaintiffs/Counterdefendants-
        Appellees,

v

MARK CUENY and POLLY CUENY,

        Defendants/Counterplaintiffs-
        Appellants,

and

WILLIAM A. CLINE and LAURINE M. CLINE,

        Third-Party Defendants,

and

BEACH FOREST SUBDIVISION ASSOCIATION,

        Defendant.

UNPUBLISHED
February 10, 2022

No. 355914
Oakland Circuit Court
LC No. 2015-150158-CH

Before: SAWYER, P.J., and RIORDAN and REDFORD, JJ.

PER CURIAM.

In this boundary dispute between neighbors, defendants/counterplaintiffs, Mark and Polly Cueny (defendants), appeal as of right the trial court's December 14, 2020 order clarifying its

judgment respecting the boundary line between their property and plaintiffs/counterdefendants, Richard and Peggy Slater (plaintiffs). We affirm.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is the second appeal in this case.[2] Plaintiffs lived next door to third-party defendants ("the Clines") for nearly 20 years. During that time, plaintiffs installed certain landscaping features along what they believed to be the boundary between the properties. The Clines never objected to the landscaping. Soon after defendants bought the Cline property in 2015, they complained that plaintiffs' landscaping infringed on their property, which prompted plaintiffs to file suit for adverse possession, acquiescence, and trespass, which in turn prompted defendants to file a countercomplaint against plaintiffs asserting the same claims and for quiet title. The trial court conducted a site visit and a bench trial after which it granted judgment in favor of plaintiffs, holding that they had established title to disputed property along the boundary line by acquiescence.

The trial court's judgment stated the trial court's findings of fact and conclusions of law and ordered among other things the following:

- The Slaters established by a preponderance of the evidence their claim for **acquiescence (Complaint at Count II)** such that this Court finds that the parties recognized and treated the black line on the Plot Plans (Slaters' **Exhibits 2** and **16**) as the boundary line between their residences. . . . As such, a judgment in favor of the Slaters is appropriate as to this cause of action.

\* \* \*

- Both parties shall file an amended deed to their respective properties that reflects the new boundary line as reflected by the black line on the Plot Plans (Slaters' **Exhibits 2** and **16**).

The "Plot Plans (Slaters' **Exhibits 2** and **16**)" referred to surveyor drawings prepared in 1995 that depicted Lots 221 and 222 of the Beach Forest Subdivision in Troy, Michigan, respectively the plaintiffs' and defendants' properties.[3] Testimony indicated that plaintiffs and Laurine Cline treated the straight boundary line shown on the Plot Plan drawings as the boundary

---

[1] In their appellee brief, plaintiffs argue that defendants are not entitled to appeal as of right. Rather than address this question, we treat defendants' claim of appeal as an application for leave to appeal granted. See *Rains v Rains*, 301 Mich App 313, 320 n 2; 836 NW2d 709 (2013); *In re Morton*, 258 Mich App 507, 508 n 2; 671 NW2d 570 (2003).

[2] In the first appeal, this Court summarized the underlying facts and we incorporate that description herein by reference. *Slater v Cueny*, unpublished per curiam opinion of the Court of Appeals, issued June 18, 2020 (Docket No. 347223) (*Slater I*).

[3] The record reflects that these plans were also referred to as the Fenn Plot Plans. This opinion will generally refer to the drawings in Plaintiffs' Trial Exhibits 2 and 16 as the Plot Plan drawings.

between their properties, though testimony also indicated that the Plot Plan drawings did not depict landmarks on the property—like manhole covers and houses—as actually built. Rather the Plot Plans depicted planned versions that later changed slightly in location or design. Richard Slater's testimony indicated that he believed that plaintiffs' landscaping existed on plaintiffs' side of the Plot Plan boundary line.

In a portion of the trial court's judgment, the court adopted plaintiffs' proposed findings of fact which included plaintiffs' description of the boundary that plaintiffs and the Clines had recognized:

> Both the Clines and Slaters treated and recognized as the boundary between their houses, a line between the two electrical boxes in the front yard by the sidewalk . . . back along the black diamond border of the bed containing the burning bushes to a space in the back corner approximately five (5) feet south (towards the Clines' Property) of the manhole cover in the backyard . . . .

After entry of the trial court's judgment, the parties continued disputing where the new boundary between the properties should run for purposes of their respective uses of the properties and definitions of the legal descriptions of their properties. Defendants took the position that the Plot Plan boundary represented the original legal boundary between the properties—meaning plaintiffs had not actually gained any land by acquiescence. Plaintiffs believed that the new postjudgment boundary should follow the specific description in their proposed findings of fact, and that, in any event, the new boundary would run along the outer edge of plaintiffs' landscaping, since that constituted the basis of plaintiffs' acquiescence claim on which they prevailed.

Neither party moved for clarification, modification, or relief from judgment, or appealed the trial court's judgment. Plaintiffs commissioned a survey to follow the specific line described in plaintiffs' findings of facts—though in fact plaintiffs appear to have exercised some discretion in directing the surveyor where the line would run. In ruling on plaintiffs' motion to enforce the judgment and find defendants in contempt, the trial court orally stated that plaintiffs' survey (which depicted a "poly line" boundary made up of five line segments oriented in slightly different directions) did not comply with the trial court's judgment which referenced the single straight Plot Plan drawings boundary line. The trial court, however, cautioned defendants that plaintiffs had gained land by acquiescence, the consequence of which required that the boundary line could not simply remain the same.

After the parties continued disagreeing where the judgment's boundary line ran, defendants moved for enforcement of the judgment and requested that the trial court appoint an independent surveyor to determine the proper boundary line based upon the judgment. Defendants argued that the boundary line had to conform to the Plot Plan drawings. Defendants requested that, after the court-appointed surveyor defined the boundary line, if any party objected to that designation, the trial court hold an evidentiary hearing at which the parties' respective surveyors and the court-appointed surveyor testify, after which the trial court would "make a decision either to affirm the line or re-mark the line consistent with its instruction." Defendants asserted that the appointment of a court-appointed surveyor would be the only way to finally resolve the boundary dispute. Plaintiffs opposed the motion on the grounds that their surveyor defined the boundary line according to the judgment and his survey had been recorded as required by the court. They argued

that defendants sought to define the boundary line as the original property line and not the new boundary line set forth in the judgment. Plaintiffs stated that the trial court had opined in a previous hearing that "the line that was originally platted on this property changed by acquiescence."

The trial court held a hearing and at its conclusion appointed a special master who hired a surveyor. This surveyor created a survey that attempted to follow the specific property line description from plaintiffs' proposed findings of fact as adopted by the trial court in its judgment. The survey depicted a boundary between the properties composed of two connected line segments, one of which slightly angled to show a new boundary line featuring the land gained by acquiescence by plaintiffs according to the judgment and divergent from the straight lot line as originally platted.

In his letter reporting his recommendation, the special master explained to the parties and the trial court that this boundary line "took into account Exhibits 2 and 16, but was guided ultimately by the Judgment." The special master explained further:

This is the only appropriate approach. It is mandated by the Judgment.

It has been suggested that the "black line" was the intended boundary of the Court. For the reasons stated above, the Special Master does not agree. The black line was a starting point from which the new boundary line was to be "reflected." See Judgment, page 7, final bullet point. That is the only way to read the Judgment as a consistent whole.

At a status conference held after the parties and trial court were informed of the special master's recommendation, defendants argued that the special master's boundary line did not match the Plot Plan boundary. The trial court responded that the special master's boundary line was "not a modification and . . . not a change." Defendants argued that the special master's boundary line curved, unlike the boundary line on the Plot Plan. The trial court responded:

My original opinion in this case and order and judgment found consistent with the Plaintiffs' argument in this case, and I found based on the record that there had been acquiescence in the change of the boundary lines over a period of time based on the record that was established. . . . [T]herefore, my judgment in determining the issues in this case determined that the line was consistent basically with what the Plaintiffs' position was.

The trial court further chided defendants for arguing for the first time after the judgment's entry that implementing the Plot Plan boundary line would result in no change in the legal boundary line. The trial court issued a written order adopting the special master's proposed boundary.

Defendants appealed to this Court arguing that the special master's boundary line lacked consistency with the trial court's judgment. This Court agreed with defendants and found that the trial court sua sponte modified the judgment by approving a "curved" boundary line after its April 24, 2017 judgment defined a specific straight-line boundary between the properties. *Slater I*, unpub op at 3. This Court ruled that the trial court lacked authority under MCR 2.612 to so modify the judgment with "substantive, rather than clerical" changes when "no motion under MCR 2.612 or appeal was filed." *Id.* This Court also held that defendants' procedural due-process rights were

violated because they were not given proper notice that the judgment might be modified or an opportunity for rehearing.[4]  *Id.* at 4.  This Court explained that a "court may sua sponte consider an issue, but it must then give a party an opportunity for a rehearing."  *Id.*  Accordingly, this Court vacated the previous order of the trial court and remanded for proceedings consistent with its opinion.

On remand, the trial court held a status conference at which it ordered the parties to file briefs respecting their position regarding the adoption of the special master's recommendation. Each party did so.  Plaintiffs requested that the trial court adopt the special master's recommendation and court-appointed surveyor's depiction of the boundary line as consistent with the court's judgment.  Alternatively, because on appeal this Court took issue with the form of the surveyor's depiction of the boundary line, i.e., that it was not straight as specified in the judgment, plaintiffs asked the trial court to slightly revise the survey to establish a straight-line boundary between the properties using the surveyed endpoints.  Plaintiffs argued that the trial court should reject defendants' position because they sought revision of the court's judgment that plaintiffs acquired title to a portion of defendants' property by acquiescence.  Plaintiffs contended that Exhibits 2 and 16 referenced in the judgment depicted the property lines as originally platted but not the new boundary line defined by the acquiescence ruling.  In other words, plaintiffs argued that the new line could not be the old line as defendants argued.  Defendants countered that the judgment referenced plaintiffs' Exhibits 2 and 16's straight black lines as the boundary line and the court could not modify that judgment because they contended that this Court ruled that the trial court had to enforce its judgment exactly as written.  Defendants asserted that plaintiffs took the position throughout the previous proceedings that the Plot Plan drawings defined the boundary line and that they could not take a different position years after the judgment which would modify the boundary line established by the judgment.  Defendants contended that the court had to enforce the judgment as written which their survey depicted.

The trial court held a hearing at the conclusion of which it again adopted the special master's proposed boundary line as defined by the court-appointed surveyor.  The trial court explained in its written order the following:

> •      The Judgment from the bench trial clearly found that the Slaters established by a preponderance of the evidence that [sic] their claim for acquiescence . . . such that this Court found that the parties recognized and treated the black line on the Plot Plans (Slaters' Trial ***Exhibits 2*** and ***16***) as the boundary line between their residences.
>
> •      The Judgment necessitated a change to the boundary line between the two properties.

---

[4] On remand, defendants were afforded notice and a rehearing, and do not raise a due-process issue in this appeal.

• This Court conducted a site visit during [sic] of the disputed property and it found that bushes and other landscape [sic] existed along the property line.

• This Court's intent in the Judgment was to recognize that bushes and other landscaping existed along the boundary line, which represented the encroachment and the acquiescence by the parties.

• This Court finds that the boundary line recommended by [the Special Master] comports with the Judgment entered by this Court on April 24, 2017 and the Supplemental Letter entered April 27, 2017.

• This Court adopts the Special Master's recommendation as to the physical placement of the property line between Lots 221 and 222 as well as the proposed legal descriptions of the properties . . . .

## II. STANDARDS OF REVIEW

"Whether a trial court followed an appellate court's ruling on remand is a question of law that this Court reviews de novo." *Schumacher v Dep't of Nat'l Resources*, 275 Mich App 121, 127; 737 NW2d 782 (2007). "Whether law of the case applies is a question of law subject to review de novo." *Ashker ex rel Estate of Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001).

## III. ANALYSIS

### A. PROPRIETY OF RAISING AND DECIDING ISSUE SUA SPONTE

In this appeal, defendants argue that the trial court acted inconsistently with both the judgment and this Court's decision in *Slater I* by again inappropriately sua sponte amending its previous judgment. We disagree.

In *Slater I*, this Court first held that the trial court erred by substantively modifying its judgment by entering its October 25, 2018 order that changed the straight-line boundary into a curved boundary line, because, under MCR 2.612, to amend or modify the judgment required the filing of a motion, but no motion had been filed by either party. This Court also held in *Slater I* that, although a court may raise an issue sua sponte, if it does so, it must provide the parties an opportunity to be heard, but in this case the trial court deprived defendants of procedural due process by not giving them notice and rehearing to permit them to present their position respecting the issue the court raised sua sponte.

In this appeal, defendants first argue that the trial court again improperly raised the boundary line issue sua sponte and had no authority to do anything respecting the judgment. Defendants assert that the only matter pending on appeal concerned their motion to enforce the judgment. Defendants gloss over the fact that their pending motion did not merely request the enforcement of the judgment as written but also requested that the trial court appoint an independent surveyor to define the properties' boundary line pursuant to the judgment and that the

trial court should specifically "*remark the line consistent with its instruction.*" On remand, the trial court revisited the issue raised by defendants regarding resolving the boundary dispute and the parties' disagreement as to the meaning of the judgment.

In the first instance, as this Court made clear in *Slater I*, the trial court had authority to raise an issue sua sponte, but to do so, it had the obligation to provide the parties procedural due process by affording them notice and opportunity to be heard on the matter before deciding it. The trial court failed to do so. Under Michigan law, when a trial court raises an issue sua sponte and decides a matter on that basis without giving the party a chance to present countering arguments or evidence, a party does not receive a meaningful opportunity to be heard. *Al-Maliki v LaGrant*, 286 Mich App 483, 488-489; 781 NW2d 853 (2009). An initial failure to provide due process, however, may be rectified by a later opportunity for the party to be heard. "Where a court considers an issue sua sponte, due process can be satisfied by affording a party an opportunity for rehearing." *Id*. at 485-486; see also *Great Lakes Div of Nat'l Steel Corp v City of Ecorse*, 227 Mich App 379, 406; 576 NW2d 667 (1998).

In this case, after the previous trial court order was vacated, on remand, the trial court revisited the boundary line issue sua sponte. This time, however, the trial court notified the parties of its decision and gave them the opportunity to brief the issue and ordered a hearing on the matter. The parties briefed the issue regarding whether the trial court should adopt the special master's recommendation and the court-appointed surveyor's definition of the adjacent properties' boundary line. The record reflects that the trial court considered carefully the parties' respective positions and heard their arguments before deciding to adopt the special master's recommendation and the court-appointed surveyor's designation of the boundary line to comport with the judgment.

Defendants argue that their motion did not seek modification, change, or correction of the judgment and that the trial court could only take such action if a party had moved under MCR 2.612 for relief from the judgment. Defendants seek to rely upon the criminal case, *People v Comer*, 500 Mich 278; 901 NW 2d 553 (2017), which determined that the criminal procedure rule, MCR 6.435(B), did not permit a trial court in a criminal case to sua sponte correct an invalid judgment once entered. Defendants, however, cite no authority for the proposition that the trial court's inherent authority in a civil action to sua sponte raise an issue is trumped by MCR 2.612. Defendants also cite no authority for the proposition that MCR 2.612 is the same as MCR 6.435(B). Close analysis of MCR 6.435(B) makes clear that it differs from MCR 2.612 by specifically limiting when a trial court on its own initiative in a criminal proceeding "may reconsider and modify, correct, or rescind any order it concludes was erroneous." MCR 2.612 does not state the same limitation. We are not persuaded that *Comer* applies in this case or requires reading into MCR 2.612 such limitation. Accordingly, we do not agree that the trial court erred by raising the issue of the boundary line definition sua sponte on remand.

Moreover, the record reflects that the trial court, upon consideration of defendants' pending motion and after agreeing to appoint a surveyor as requested by defendants so that the dispute regarding the judgment's specification of the boundary line could be appropriately revealed for finality sake, properly raised the issue sua sponte and met its due process obligations by giving the parties notice and opportunity to be heard on that issue. Defendants' motion had requested that the trial court hire a surveyor to set the boundary line and to "remark the line consistent with its instruction." The record reflects that that is precisely what the surveyor did and the trial court

analyzed the surveyor's line drawing in relation to its judgment. The special master provided incisive analysis and the trial court agreed that the boundary so defined comported with the trial court's judgment. The trial court's action both satisfied due process and defendants' motion's request for action.

## B.  LAW-OF-THE-CASE DOCTRINE

Defendants argue further that the trial court's action on remand violated the law-of-the-case doctrine because this Court ruled in the first appeal that the trial court substantively modified the judgment by changing the dimensions of the parties' properties by imposing a curved rather than straight boundary line. Defendants assert that the law-of-the-case doctrine applies in this case to prevent the trial court from reinstating the exact same curved line that this Court rejected in *Slater I*. Defendants request that we order the trial court to adopt the exact dimensions of the Plot Plan boundary line drawings without regard for the trial court's adoption of plaintiffs' proposed factual findings in its judgment, the landmarks depicted in the Plot Plan drawings in Plaintiffs' Exhibits 2 and 16, the Clines' and Richard's testimonies about where the boundary line lies, the trial court's explanation of its intent that the judgment "recognize that bushes and other landscaping existed along the boundary line, which represented the encroachment and the acquiescence by the parties," or the trial court's opinion that the special master's recommendation and proposed property legal descriptions comport with the judgment. In essence, defendants seek the imposition of the original plotted boundary line which would negate the trial court's decision that plaintiffs obtained title to a portion of defendants' property by acquiescence.

> Under the law-of-the-case doctrine:
>
> a ruling by an appellate court with regard to a particular issue binds the appellate court and all lower tribunals with respect to that issue. Thus, a question of law decided by an appellate court will not be decided differently on remand or in a subsequent appeal in the same case. [*Driver v Hanley*, 226 Mich App 558, 565; 575 NW2d 31 (1997) (citations omitted).]

The rationale for the doctrine includes:

> the need for finality of judgments and the lack of jurisdiction of an appellate court to modify its judgments except on rehearing. Further, the law of the case doctrine applies without regard to the correctness of the prior determination, so that a conclusion that a prior appellate decision was erroneous is not sufficient in itself to justify ignoring the law of the case doctrine.
>
> The law of the case doctrine is discretionary and expresses the practice of the courts generally; it is not a limit on their power. The doctrine will not be applied if the facts do not remain materially or substantially the same or if there has been a change in the law. [*Grace v Grace*, 253 Mich App 357, 363; 655 NW2d 595 (2002) (citations omitted).]

The "doctrine applies only to those questions determined by the appellate court's prior decision and to those questions that are necessary to the court's determination." *Marysville v Pate, Hirn & Bogue, Inc*, 196 Mich App 32, 34; 492 NW2d 481 (1992).

This Court has found that the "material fact change" exception applied in a case when the fact change in question resulted from this Court's *mistake* rather than a change in the actual existing facts. This Court explained that its holding had been:

> expressly limited to the facts of the case, and in reciting the facts, we incorrectly stated that plaintiff had "filed a complaint with the Michigan Department of Labor, Wage and Hour Division." On remand, the circuit court dismissed plaintiff's WPA claim because plaintiff's report was made to the USDL, a federal agency. Both parties agree that plaintiff's report was made to the federal agency rather than a state agency. Accordingly, because the key fact upon which the circuit court relied to dismiss plaintiff's [claim] was not among the facts apparently relied on by this Court, the law of the case doctrine was not applicable on remand and does not now bind this Court on the issue. [*Driver*, 226 Mich App at 565-566.]

As in the first appeal, we are again faced with the task of interpreting the trial court's judgment to discern where the court set the new boundary after ruling that plaintiffs prevailed on their acquiescence claim. We note that fundamental confusion about the boundary line existed between the parties giving rise to this dispute and that the trial court fashioned its judgment after a site visit and consideration of the witnesses' testimonies and the exhibits admitted during the trial. The judgment declared plaintiffs' acquisition of title to a portion of defendants' property by acquiescence but appears to set the boundary line between the properties according to the boundary depicted in the preconstruction Plot Plan drawings identified in the record and particularly in the judgment as Plaintiffs' Exhibits 2 and 16, despite the contradictory adoption of the facts as set forth by plaintiffs' proposed findings of fact which described the boundary of their property as encompassing the land on which they encroached with their landscaping. Understanding where the new boundary line fell is complicated by the fact that the judgment did not specify exactly where the Plot Plan boundary line exists and did not provide a legal description of the new boundary line's location. Further, the judgment did not specify how the relief sought by and granted to plaintiffs, i.e., the new boundary line, fell in relation to the location of various landmarks described on the Plot Plan drawings nor how the line related to existing landmarks in their final as-built locations.

The judgment's use of the "black line" from the Plot Plan drawings to establish the new property boundary suggests that the original lot boundary demarcation constituted the new dividing line. The judgment's adoption of plaintiffs' factual findings for the trial court's conclusion of law that plaintiffs acquired title by acquiescence to a portion of defendants' property conflicts with the court's prescription of a straight boundary line as set forth in Plaintiffs' Exhibits 2 and 16. Analysis of these two features of the judgment reveals that it is susceptible to two conflicting interpretations regarding the new boundary. Either the boundary consisted of the original line depicted in the Plot Plan drawings rendering the acquiescence ruling nugatory, or the boundary line changed the existing boundary by granting plaintiffs title to a portion of defendants' property. The parties' postjudgment ongoing dispute over the placement of the new boundary line arose because the judgment simultaneously granted plaintiffs relief while at the same time seemingly negating it.

In *Slater I*, this Court referred to the trial court's reference to the Plot Plan drawings straight line without discussing the trial court's adoption and incorporation of the more specific property

line description given in plaintiffs' proposed findings of facts which the trial court adopted. This Court also did not acknowledge the fundamental inconsistency between the trial court's judgment for plaintiffs and the potential adoption of the Plot Plan drawings' boundary line. *Slater I* reveals that this Court did not have the special master's recommendation letter containing his explanation of the judgment's boundary demarcation, nor did this Court have a transcript of the status conference held after the parties and trial court received the special master's recommendation. See *Slater I*, unpub op at 2 n 1 & 2. Both items explained the factual predicate and reasoning behind adoption of the special master's recommended boundary line as defined in the April 24, 2017 judgment. In *Slater I*, this Court decided the previous appeal without the benefit of review of the special master's letter explaining how the boundary line defined by the court-appointed surveyor was consistent with the trial court's judgment as that judgment could only be read. This Court also did not review the transcript of the status conference during which the trial court explained its rationale for adopting the special master's boundary line and clarified that the specified line did not represent a modification of the April 24, 2017 judgment. Only after remand did it become clear that the parties agreed that the Plot Plan boundary line constituted the original legal boundary line. The trial court's order on remand further clarifies its actions. The meaning of a judgment may require clarification by a trial court if the language used is ambiguous. See *Beason v Beason*, 435 Mich 791, 806; 460 NW2d 207 (1990).

Additionally, we note, in *Slater I*, the Court addressed the order issued previously and the claims related to due process. After these discussions, the Court wrote:

> A court may sua sponte consider an issue, but it must then give a party an opportunity for a rehearing. Accordingly, defendants were not given the opportunity for a rehearing. Overall, the court's actions deprived defendants of their right to procedural due process because the court's actions were fundamentally unfair.

> In conclusion, the trial court's October 25, 2018 order is vacated and this matter is remanded for proceedings consistent with this opinion.

*Slater I* did not reverse and order reinstated a straight property line consistent with Exhibits 2 and 16; rather, it vacated and remanded as indicated above. We conclude that the law-of-the-case doctrine did not preclude the trial court from clarifying the ambiguous judgment once the parties were provided notice and an opportunity to be heard. On remand, the trial court did not err by defining the boundary line so that it did not remain unchanged as desired by defendants because doing so essentially would have converted the trial court's judgment for plaintiffs into a judgment for defendants. Had the trial court not clarified its judgment as part of its proceedings in relation to defendants' motion to enforce the judgment, and merely set the boundary line as the straight line depicted in the Plot Plan drawings, the result would have been unjust by negating the decision made by the trial court in favor of plaintiffs.

Accordingly, we do not agree with defendants' contention that the law-of-the-case doctrine precluded the trial court from clarifying its judgment's meaning when adjudicating defendants' pending motion, particularly where the parties continued postjudgment to dispute the judgment's placement of the new boundary line, and since defendants asked the trial court to hire a surveyor to set the boundary line and remark the line consistent with its instruction.

## C. INTERPRETATION OF THE JUDGMENT

As explained previously, the trial court entered an ambiguous judgment because its provisions were capable of conflicting interpretations. Amendment of the judgment might have been achieved under MCR 2.611(A)(2) or MCR 2.612(C)(1) if a timely motion had been made—but such is not the case here. Nevertheless, "Circuit courts have jurisdiction and power to make any order proper to fully effectuate the circuit courts' jurisdiction and judgments." MCL 600.611. Interpreting this and other sections in the context of a trial court's contempt powers, this Court held: "A trial court has inherent and statutory authority to enforce its orders." *In re Moroun*, 295 Mich App 312, 331; 814 NW2d 319 (2012). This Court has held, in the context of a trial court's appointment of a receiver, "[a] court has the basic responsibility of enforcing its own orders and has considerable discretion in choosing the means to be employed." *Weathervane Window, Inc v White Lake Const Co*, 192 Mich App 316, 322; 480 NW2d 337 (1991). In this case, defendants sought the trial court's enforcement of the judgment because the parties lacked clarity as to the proper interpretation and effect of that judgment. The trial court had authority to enforce its judgment and cannot be said to have erred by clarifying that judgment's meaning or the trial court's intent regarding the establishment of the new boundary line.

In the context of divorce property rights decrees, our Supreme Court held:

> [A] court of equity normally possesses inherent authority to enforce its own directives. This necessarily [sic] includes the exercise of some discretion in interpreting them; and where enforcement of a property settlement provision is sought in situations where the court in the original decree has directed that one of the parties perform specific acts, it is felt that the court necessarily reserves some latitude to construe the basic intent and purpose of the decree directive, and may enter an appropriate supplemental order accordingly, despite the fact that the precise language of the original decree may not have spelled out exactly what was later found necessary to be done to achieve those broad purposes. [*Greene v Greene*, 357 Mich 196, 202; 98 NW2d 519 (1959); see also *Walworth v Wimmer*, 200 Mich App 562, 564; 504 NW2d 708 (1993), citing *Greene*.]

Likewise in the divorce context, this Court has held that a trial court could "*interpret and clarify* the parties' agreement without considering MCR 2.612" "provided it does not *change* the parties' substantive rights as reflected in the parties' agreement." *Neville v Neville*, 295 Mich App 460, 469; 812 NW2d 816 (2012) (emphasis original).

Regarding how court orders are to be interpreted, in at least some cases, this Court has held "[c]ourts should interpret the terms in a judgment in the same manner as courts interpret contracts." *AFT v State*, 334 Mich App 215, 236; 964 NW2d 113 (2020) (interpreting orders of this Court and the Michigan Supreme Court that certain "funds be returned 'with interest' ").[5] This Court has

---

[5] Many cases discussing interpretation of ambiguous court orders arise in the divorce judgment context in which judgment terms are often negotiated between the parties. *AFT*, 334 Mich App at

also held that orders should be interpreted so as to render them most "reasonable, effective and conclusive." *Eyde v State*, 82 Mich App 531, 539; 267 NW2d 442 (1978), citing *Hendrie v Lowmaster*, 152 F2d 83, 85 (CA 6, 1945) ("Where a judgment is susceptible of two interpretations, it is the duty of the court to adopt that one which renders it more reasonable, effective and conclusive in the light of the facts and the law of the case.").[6]

The parties' ongoing dispute regarding the meaning and application of the trial court's judgment in this case required the trial court to interpret and clarify for the parties its intent and purpose in its judgment to enable proper enforcement to give finality to its ruling. The record reflects that the trial court on remand in deciding defendants' motion properly sua sponte raised the issue of the correct interpretation of the judgment and gave the parties the requisite notice and opportunity to be heard on the issue, then provided in its ruling the necessary clarification of the intent and meaning of the trial court's judgment to facilitate enforcement and provide the parties finality. See MCL 600.611; *In re Moroun*, 295 Mich App at 331; *Weathervane Window, Inc*, 192 Mich App at 322. We hold that the trial court did not err in this regard.

Affirmed.

/s/ David H. Sawyer
/s/ Michael J. Riordan
/s/ James Robert Redford

---

236, itself cites a divorce case for the principle that contract principles apply. See *id*., citing *Smith v Smith*, 278 Mich App 198, 200; 748 NW2d 258 (2008).

[6] "Although lower federal court decisions may be persuasive, they are not binding on state courts." *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).